Edwards v. Boyd.

EDWARDS and WIFE *v.* WM. BOYD, and BOYD *v.* ED-
WARDS and WIFE.

MARRIED WOMEN. *Mortgage. Husband agent of creditor. When.* Where
the husband procures his wife's conveyance to homestead, or to her
lands, to secure a pre-existing debt of his, he will be regarded as the
agent of the creditor, who will be bound by the husband's actions.

FROM WEAKLEY.

Appeal from the Chancery Court at Dresden. JOHN
SOMERS, Ch.

C. M. EWING and N. N. EDWARDS for Edwards.

H. H. BARR and M. D. CARDWELL for Boyd.

FREEMAN, J., delivered the opinion of the court.

The contest in this case is over the question, whether
the wife of Edwards has released her homestead right
in seventy-five acres of land on which the family re-
sided, by the privy acknowledgment of a deed of trust
in favor of defendant Boyd, and made to him to se-
cure a pre-existent debt due him from the husband.

The bill goes on two propositions. First, that the
signature and privy acknowledgment of the wife was
obtained by fraud and under a collusive arrangement
between the husband and said Boyd, by which the
wife was to be made believe she was signing deeds
for two other tracts of land sold to Boyd, and the

Edwards *v.* Boyd.

fact that she was signing a conveyance of her homestead concealed from her.

We need but say, that while there are some suspicious circumstances shown tending to support this theory, yet it is positively proven alone by the testimony of the husband, and is with equal emphasis disproved by Boyd, and as they are the only parties who probably know the facts of the transaction, the proof is pretty equally balanced, and complainant fails to make out her case.

The other ground is, that the wife did not know the contents of the paper signed, and signed it against her will, and not freely, voluntarily and understandingly, as required by our statute.

This case differs from the case of *Shields* v. *Netherland,* 5 Lea, 197–8, in that, the conveyance was not made for a valuable consideration then advanced on the faith of it, and also, in that case, the husband who procured the signature of the wife, was clearly not acting as the agent of the creditor, but was acting for himself, in procuring the wife's signature to the deed.

In this case it clearly appears that the conveyance and signature by the wife, was to secure a pre-existent debt to Boyd. That the husband was in failing circumstances, and Boyd had a mortgage on lands, to which the wife was not a party, and had discharged a mortgarge to Brasfield of about $800, in order to free the land in favor of his own debt, and was very anxious to have himself secured and re-imbursed for money thus expended.

It is further shown, both by the husband and by Boyd himself, that it was agreed between himself and the husband, that the husband should procure the wife's signature to the deed for the homestead, in order to secure the debt mentioned. It is certain that her signature was obtained by the husband in pursuance of this agreement.

This brings the case within the principle stated by Judge Cooper, 5 Lea, 199, that "if the husband could be considered as the agent of the trust creditor, or conveyee, for the purpose of procuring the wife's conveyance, as where the creditor is seeking to obtain a mortgage on the wife's land for the security of a pre-existing debt of the husband, the creditor might be bound by the husband's action," citing *Central Bank* v. *Copeland,* 18 Md., 305. The husband in this case, was charged with having fraudulently procured the signature, and the above rule stated as the correct one in the case supposed.

This rule is a sound one, for in such case, the creditor is making a contract with the wife, in which she is required to act freely, voluntarily, and without compulsion or restraint, in order to effectuate the conveyance. She is releasing a property-right to him for his benefit, to secure the debt of her husband, it is true, but it is not her own, nor is her property liable for it, nor was it contracted on the faith of such liability. In good faith, and of necessity, he is compelled to trade with her, either by himself or an agent, as negotiation and mutual agreement as to terms are essential elements in a contract of this kind as well as

others. In one of such delicacy as this, guarded by our law with such care, and subject to so much abuse in case of husbands distressed and harrassed by debt, perfect fairness—at any rate, common prudence would demand that the creditor himself (where it can be done), should, in a case like this, see the wife, and know that she assents to the contract he is making with her. He must either do this or communicate with her by some other means, and if he chooses the husband as that means of communication, he must, in common fairness, do so at the peril of being responsible for his conduct of the business, as in other cases of agency. Such is the · principle announced, and it is one well sustained by reason, authority and the nature of the transaction.

The weight of the proof is, that the wife did not know the character of the instrument she signed. She and her husband swear it most positively—and the commissioner, and his wife, who was present at the privy examination, agree that the deed was not read over to her. There are some efforts made to show that she afterwards spoke of having signed such a paper, or knew that such a deed was held by Boyd. These apparent contradictions are doubtfully made out, and not being clearly shown, belonging to a class of testimony characteristically weak, that is, a recital of casual conversation by witnesses' years after they occurred, cannot overturn the positive swearing of unimpeached witnesses, howbeit, they are interested as parties to the cause.

In addition, there are circumstances tending to indicate that she would not have willingly signed the deed for her homestead. The husband was being broken up and his property swept away in payment of debts incurred, as partner and surety for another. She well may be justified in saying that she was opposed to signing even the other deeds to pay · Underwood's debts and therefore, would have been more opposed to signing one conveying the last of his land, including their home.

But it is clearly shown, both by the husband and wife, that when called on to acknowledge · privily the papers, she promptly responded that she could not do it willingly—or freely and voluntarily—and in addition, the same is proven by the commissioner and his wife.

The facts shown by these witnesses, about which there is no dispute is, that at first she refused to sign, told the commissioner she did ·not do it willingly or fully of her own accord, and this was made so emphatic, as he says, that he said to her she could not sign them at all, and. put them back in his desk, afterwards she said to him she reckoned she would have it to do anyhow, and had as well do it then as at any other time, and thereupon he read over the certificate, and she signed the deed by making her mark and he witnessed it. He says, that she told him she could not sign it voluntarily, but that she had been over-persuaded by her husband, and among other things, said he had been talking to her about it all day—it being then the afternoon—about two or three o'clock.

The chancellor held, that she did not understand

Edwards *v.* Boyd.

the instrument signed, and therefore did not acknowledge it understandingly, and that she did not sign it freely, voluntarily and without restraint, and therefore decreed it void as to her homestead right.

The question is whether this is correct on the above facts. Upon careful reflection, we conclude the chancellor was correct. The husband being the agent of the defendant, so far as procuring the signature and assent of the wife, is concerned, must be held bound by the acts and conduct of the husband. The weight of the proof shows very satisfactorily that the husband concealed, or did not reveal the character of the deed she was signing, and that she was procured to sign it, without knowing its contents, and this end was sought by him. It further appears by the witnesses of the defendant himself, that the deed was not read over to her when signed and privily acknowledged.

We hold these facts constitute a fraud on the wife, and render invalid her act as against the attack made in the bill.

The result is, the decree of the chancellor is affirmed with costs.